[Doc. No. 11]

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| B.G., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  Civil No. 13-5166 (JBS/JS) |
| | : |
| OCEAN CITY BOARD OF EDUCATION, | : |
| | : |
| Defendant. | : |
| _____ | : |

**OPINION**

This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 11] filed by plaintiff B.G. The Court received a response in opposition from defendant Ocean City Board of Education ("Ocean City") [Doc. No. 13]. B.G. has also submitted a Reply. [Doc. No. 15]. Oral argument was held by telephone on September 23, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to decide plaintiff's motion. [Doc. No. 8]. For the reasons to be discussed, B.G.'s motion is GRANTED to the extent the motion requests the Court to remand this matter for a due process hearing. The Court will Order plaintiff's dispute to be remanded to the New Jersey Office of Special Education Programs in order for B.G.'s due process complaint to be addressed in a manner consistent with the IDEA and N.J.A.C. § 6A:14-2.7 ("Due Process Hearings"). To the extent plaintiff's motion asks the Court to address the merits of her due

1

process complaint de novo, the request is DENIED. As discussed herein in detail, at this time the Court is not taking issue with the underlying decision. Instead, the Court finds that the procedural deficiencies discussed herein prejudiced plaintiff and remand is appropriate so that plaintiff's due process complaint can be fully vetted.

**<u>Background</u>**

This matter concerns whether B.G., a former Ocean City School District special education student, was provided with a Free Appropriate Public Education ("FAPE") and transitional services in accordance with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and New Jersey law. B.G. appealed to this Court the Administrative Law Judge's June 3, 2013 Decision on Emergent Relief and Order which denied her application for emergent relief and petition for continued education, and ordered that Ocean City may graduate plaintiff. See June 3, 2013 Order, Pl.'s Ex. A. At all relevant times plaintiff represented herself in the referenced administrative law proceedings. Plaintiff is presently represented by counsel.

Plaintiff is a special needs student who, in the past three years, has been enrolled in three different schools, two of which were outside of the Ocean City school district. For the 2010-2011 school year, B.G. was enrolled in the Cape May County Special Services School District, which consisted of academic and

vocational placement. Def.'s Br. at 6; see Transcript of May 31, 2013 Hearing ("Tr.") 8:2-24, Pl.'s Ex. G. At the conclusion of the 2010-2011 school year, the Cape May School District notified Ocean City that B.G. was noncompliant with its program and would not be eligible for placement the following year. Id.

With B.G. and her advocates' consent, Ocean City then placed B.G. in the Ocean City Extension Program for the 2011-2012 school year. Def.'s Br. at 5; Tr. 8:11-9:21. The program again consisted of academic and vocational placement. Id. According to Ocean City, B.G. was noncompliant with the program, "by poor attendance and a refusal to do assigned work." Def.'s Br. at 5. During the 2011-2012 school year, B.G. filed a petition asserting the same arguments considered in the instant matter, namely, that Ocean City did not provide B.G. with a FAPE and appropriate and necessary transitional services. Def.'s Br. at 5. Following mediation, Ocean City agreed to place B.G. in the Atlantic County Special Services School District (ACSS) for the 2012-2013 school year. Def.'s Br. at 6; Tr. 10:1-11. Citing plaintiff's poor attendance (51 days absent) and refusal to work, ACSS informed Ocean City that plaintiff would not be eligible for re-enrollment for the following school year. Def.'s Br. at 6; Tr. 10:14-19. As a result, in April 2013, Ocean City notified B.G. that it planned to graduate her at the conclusion of the school year in accordance with her September 20, 2012 Individualized Education Plan ("IEP"), which permitted a

3

June 2013 graduation. Def.'s Br. at 7; IEP at 15. B.G. subsequently notified the school that she was challenging the graduation. B.G. requested a due process hearing by letter on April 18, 2013 which stated that she did not feel ready to graduate and wished to continue learning vocational and job readiness skills. See April 18, 2013 Letter from B.G, Pl.'s Ex. D. She also asserted that she did not have an appropriate transition plan in her IEP. Pl.'s Ex. D at 1. Thereafter, on May 13, 2013, B.G. filed a *pro se* Request for Emergent Relief pursuant to N.J.A.C. 6A:14-2.7(r) and (u). See Request for Emergent Relief, Pl.'s Ex. E. The emergent relief requested was a stay-put order to prevent graduation. Id.[1]

An emergent relief hearing was held on May 31, 2013 before the Honorable Brue J. Gorman, an Administrative Law Judge ("ALJ"), who issued his Opinion on June 3, 2013. See June 3, 2013 Order. At the May 31 hearing Ocean City argued that B.G. had sufficient credits to graduate and had declined to take advantage of the educational services offered to her. Tr. 11-16. Without notice to

---

[1]     As will be discussed in section 3.c., infra, in deciding whether emergent relief is warranted the judge considers four factors: whether the petitioner will suffer irreparable harm if the requested relief is not granted; whether the legal right underlying the petitioner's claim is settled; whether the petitioner has a likelihood of prevailing on the merits of the underlying claim; and when the equities and interests of the parties are balanced, whether the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted. N.J.A.C. 1:6A-12.1(e).

plaintiff, the ALJ heard testimony from plaintiff's case worker, Vicki Scheetz, at the hearing. Tr. 7-16. B.G. claimed at the hearing that her noncompliance with the ACSS program should be excused because of her medical illnesses and difficulty performing the work. Tr. 13:7-16. The ALJ's June 3, 2013 Order not only denied B.G.'s emergent relief petition, but also effectively decided the merits of the claims contained in B.G's due process complaint. See generally June 3, 2013 Order. The ALJ found that Ocean City should not be required to expend additional time, effort and money on B.G., that her request for continued education be denied, and that graduation in June 2013 was appropriate. Id. at 4.

B.G. requests that the Court order that she be permitted to attend one more year of school, or in the alternative, that the case be remanded to the ALJ for a full due process hearing. For the reasons to be discussed, the Court finds that no material facts are in dispute, summary judgment should be awarded to plaintiff, and remand is warranted.

**Discussion**

**1. Background on the IDEA**

This action is brought in federal court pursuant to 20 U.S.C. § 1415(e)(2), which provides that an IDEA decision of a state educational agency may be appealed to a federal district court. Fuhrmann on Behalf of Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1034 (3d Cir. 1993). As a general matter, the purpose

5

of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ('FAPE') that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA requires that states receiving federal funds for education must provide a FAPE to every disabled child. See generally 20 U.S.C. § 1412.

The IDEA imposes certain requirements on a school district. First, the school must provide an "appropriate" education, that is, confer a meaningful education to a child with special needs. The core of that education is embodied in an Individualized Education Plan, commonly referred to as an IEP.[2] Second, the school must, to the maximum extent appropriate, educate the child in the least restrictive environment, commonly referred to as LRE. See Carlisle Area Sch. v. Scott P. By & Through Bess P., 62 F.3d 520, 533-34 (3d Cir. 1995) (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 200 (1982)).

---

[2]     An IEP must include, inter alia, (1) a statement of the child's present levels of academic achievement and functional performance, (2) a statement of measurable annual goals, including academic and functional goals, (3) a statement of the special education and related services and supplementary aids and services to be provided to the child, (4) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and activities, and (5) the frequency, location and duration of the services. 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320(a)(1); N.J.A.C. § 6A:14-3.7.

The Supreme Court has announced a two-part inquiry for determining a school district's liability for violations of the IDEA: (1) has the school district complied with the procedures set forth in the IDEA and (2) has the school district fulfilled its obligation to provide the student with a FAPE. <u>C.H. v. Cape Henlopen Sch. Dist.</u>, 606 F.3d 59, 66 (3d Cir. 2010) (citing <u>Rowley</u>, 458 U.S. at 206-07). A procedural violation of the IDEA is not a per se denial of a FAPE. <u>Id.</u> Rather, "a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents." <u>Id.</u> (citation omitted).

When a parent or majority-aged student objects to the adequacy of the education provided, the construction of the IEP, or some related matter, the IDEA provides procedural recourse. It requires that a state provide "'[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child.'" <u>Winkelman ex rel Winkelman v. Parma City Sch. Dist.</u>, 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). This takes the form of an administrative proceeding centered around an "impartial due process" hearing pursuant to 20 U.S.C. § 1415(f)(1) and N.J.A.C. § 6A:14-2.7. <u>D.C. v. Mount Olive Twp. Bd. of Educ.</u>, C.A. No. 12-

5592 (KSH) 2014 WL 1293534, at *2 (D.N.J. Mar. 31, 2014); see also
R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012)
(clarifying that a due process hearing is "a type of administrative
challenge unrelated to the concept of constitutional due
process"). After state proceedings are completed, "the IDEA
permits an aggrieved party to bring a civil action in any court."
S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 257 (3d Cir. 2013)
(citing 20 U.S.C. § 1415(i)(2)(A)). When a student is denied the
rights and procedures provided in the IDEA, he or she is afforded
the opportunity to file an administrative complaint to appeal an
adverse determination to a federal district court. 20 U.S.C. §§
1415(b)(6), (i)(2).

## 2. Standard of Review

Pursuant to Fed. R. Civ. P. 56, summary judgment is
appropriate where the court is satisfied that "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any . . . demonstrate the absence
of a genuine issue of material fact." Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986) (internal citations omitted). Summary
judgment will not lie if the dispute about a material fact is
"genuine," that is, if the evidence is such that a reasonable jury
could return a verdict in favor of the non-moving party. Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality
of a fact turns on whether under the governing substantive law, a

dispute over the fact might have an effect on the outcome of the suit. Id. The court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008).

The moving party bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id. at 256-57.

Here, plaintiff asks for summary judgment regarding the appeal of the ALJ's decision. The standard of review under which this Court considers an appeal of a state administrative decision under the IDEA "differs from that governing the typical review of summary judgment." Alloway Twp. Bd. of Educ. v. C.Q., C.A. No. 12-6812 (RMB/AMD), 2014 WL 1050754, at *3 (D.N.J. Mar. 14, 2014) (citing Heather S. by Kathy S. v. State of Wisconsin, 125 F.3d

9

1045, 1052 (7th Cir. 1997)). Section 1415(i)(2)(B) of the IDEA provides that district courts "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

Alternatively, after reviewing a final administrative order, the district court may remand the case to the ALJ for clarification when appropriate. Carlisle Area School v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995) ("To prohibit the court from remanding for clarification would impair the court's ability to review the decision fairly"); see also T.L. v. New York City Dep't of Educ., 938 F. Supp. 2d 417, 436-37 (E.D.N.Y. 2013) (a court may remand an IDEA proceeding when it needs further clarification and development of the record or does not have sufficient guidance from the administrative agency). When there is no new evidence presented to the district court the motion for summary judgment may be used to decide the case on the basis of the administrative record. M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ., 202 F. Supp. 2d 345, 359 (D.N.J. 2002) aff'd, 65 Fed. Appx. 404 (3d Cir. 2003). If summary judgment is denied the IDEA directs the district court to "conduct a modified de novo review, giving 'due weight' to the underlying administrative proceedings." C.H. v. Cape Henlopen School District, 606 F.3d 59, 65 (3d Cir. 2010) (citing

S.H. v. State Operated Sch. Dist. Of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). Factual findings from the administrative proceedings are to be considered prima facie correct. Id.; see also Ridley School District v. M.R., 680 F.3d 260, 268 (3d Cir. 2012) (stating that if a reviewing court fails to adhere to the factual findings, it must explain why). "If the Court departs from the ALJ's findings, it must find factual support in the record and 'fully explain [ ] its reasons for departing from the state decision.'" G.A. ex rel. L.A. v. River Vale Bd. of Educ., C.A. No. 11-3801 (FSH), 2013 WL 5305230, at *5 (D.N.J. Sept. 18, 2013) (citing S.H., 336 F.3d at 270-71). "Credibility determinations by the ALJ, who heard live testimony, are entitled to special weight 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" Id. (citation omitted).

In contrast, whether an IEP is appropriate is a question of fact. S.H., 336 F.3d at 271. Findings of fact with respect to the appropriateness of the IEP are, therefore, reviewed for clear error. P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 735 (3d Cir. 2009).

### 3. Plaintiff's Arguments

As will be discussed in detail, the Court finds that this matter should be remanded to the New Jersey Office of Special Education Programs in order for plaintiff's due process complaint to be appropriately decided. At this time the Court is not taking

issue with the merits of the ALJ's finding that plaintiff was noncompliant. However, with due respect to the ALJ, the Court finds that appropriate procedures were not followed with regard to the May 31, 2013 hearing. Not only was plaintiff not given the required notice of defendant's testimonial witness, but the emergent hearing morphed into a due process hearing without prior notice to plaintiff. In addition to the fact that the merits of plaintiff's due process arguments were not considered, plaintiff was unfairly denied the opportunity to present all relevant evidence in support of her due process complaint.

### a. The Five-Day Rule

In accordance with N.J.A.C. 6A:14-2.7(r)(1)(iv), as part of a request for a due process hearing, B.G. filed an emergent relief petition on May 13, 2013 to temporarily suspend her graduation. The hearing was held 18 days later on May 31, 2013. B.G. argues that the testimony of Vicki Scheetz should be excluded because it was not disclosed to her at least five days before the hearing that Scheetz would testify. Pl.'s Br. at 14; see N.J.A.C. 1:6A-10.1(c) (hereinafter, the "five-day rule") ("the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time."). If Scheetz's testimony is

excluded, plaintiff argues, this matter must be remanded. The Court agrees with plaintiff.

While the New Jersey Administrative Code does not explicitly state that the "five-day rule" applies to emergent relief hearings, the Court finds that B.G. was entitled to notice that a witness would testify for defendant, particularly where the ALJ decided B.G.'s due process complaint on the merits (see section 3.b., infra). The five-day rule specifically states that evidence to be used at a "hearing" must be disclosed to the opposing party five days prior to the hearing. See N.J.A.C. 1:6A-10.1(c). The applicability provision of Chapter 6A ("Special Education Program") states that the rules of the chapter apply to the "notice and hearing of matters arising out the Special Education Program of the Department of Education." N.J.S.A. 1:6A-1.1.

Even though the five-day rule typically applies in the context of due process hearings (see e.g., L.J. v. Audubon Bd. of Educ., C.A. No. 06-5350 (JBS), 2008 WL 4276908 (D.N.J. Sept. 10, 2008), discussed infra), the Court finds that where practical, the rule is equally applicable to emergent relief hearings. This is supported by the fact that the New Jersey Administrative Code considers emergent relief hearings to be "part of" due process hearings. See N.J.A.C. 6A:14-2.7(r)(1)(iv).

Here, B.G. filed her emergent relief petition on May 13, 2013 and the hearing was held 18 days later on May 31, 2013. Therefore,

13

it was feasible and practical for B.G. to be appropriately notified that Scheetz, or any other witness, would testify.[3] Without notice of the evidence to be used against her, it was difficult for B.G. to prepare for her hearing. See L.J., 2008 WL 4276908, at *4 (D.N.J. Sept. 10, 2008) ("one of the most obvious purposes of the five-day rule under New Jersey and federal law is to prevent parents from having to defend against undisclosed evidence produced at the last minute in administrative proceedings") (internal citation and quotation omitted). In L.J., Chief Judge Simandle affirmed the ALJ's decision to exclude evidence where there was nothing in the record to suggest that the evidence could not reasonably have been disclosed five days before the due process hearing. 2008 WL 4276908, at *5 n.5. Similarly, Scheetz's testimony should be excluded because the fact that she would testify was not disclosed to plaintiff.

Ocean City contends that even if Scheetz's testimony is excluded it would not have any impact on the ALJ's determination. Ocean City argues that none of the information presented was outside B.G.'s student records. Def.'s Br. at 10-11. At the hearing Scheetz testified to B.G.'s allegedly unexcused absences which was a substantial component of Ocean City's argument that B.G. was

---

[3]     The Court acknowledges that after reviewing the hearing transcript it appears that Ocean City's counsel did not call Scheetz to testify. The ALJ appears to have noticed Scheetz in the courtroom and called her to testify. Tr. 6:16-7:20. Regardless, B.G. was not given proper notice that Scheetz would testify which violates the five-day rule.

noncompliant with the requirements of her programs. See Tr. 10:14-
15. It appears from the transcript that the ALJ gave significant
weight to this testimony. Although B.G. disputed that her absences
were unexcused (Tr. 14:10-20), she was unable to present counter
evidence because Scheetz was not previously disclosed as a witness.
B.G.'s inability to effectively rebut Scheetz's testimony
demonstrates that B.G. did not have the opportunity to properly
prepare for her hearing.

Having determined that Scheetz's testimony should be
excluded, remand is appropriate. It is apparent from the hearing
transcript that Scheetz's testimony was central to the ALJ's
decision. The Court cannot and will not speculate as to whether
the ALJ's decision would be the same if Scheetz's testimony is
excluded. Therefore, before the issues raised in plaintiff's
complaint are heard by this Court, a due process hearing needs to
be held before the ALJ that complies with all applicable procedural
requirements. This has not happened yet.

Relatedly, B.G. argues that she was not given an opportunity
to cross-examine Scheetz during the May 31 hearing. Pl.'s Br. at
15. In response, Ocean City argues that "a review of the transcript
makes it abundantly clear that B.G. was given the opportunity to
[present witnesses and cross-examine Scheetz] but she chose not to
when provided the opportunity." Def.'s Br. at 11. The Court finds
that the record is not as clear as defendant suggests. Since B.G.

15

was not given prior notice that Scheetz would testify and the subject of her testimony, B.G. was not given a meaningful opportunity to cross-examine Scheetz. Further, the ALJ did not ask B.G. if she wanted to direct any questions toward Scheetz. Therefore, the Court finds that plaintiff was denied the benefit of the five-day rule. B.G. was not given notice pursuant to N.J.A.C. 1:6A-10.1(c) that Scheetz would testify at the emergent relief hearing. She was also not given a meaningful opportunity to cross-examine Scheetz. These deficiencies warrant remand.

### b. Transitional Services and Review of B.G.'s IEP

The Supreme Court has made it clear that the IDEA's "procedural safeguards cannot be gainsaid," as "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians[4] a large measure of participation at every stage of the administrative process, as it did upon the measurement of the resulting IEP against a substantive standard." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010) (citing Rowley, 458 U.S. at 205) (internal citation omitted). "A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." Id. (citing Winkelman v.

---

[4] Parental rights transfer to the students when they reach the "age of majority under State law." 20 U.S.C. § 1415(m). B.G. has reached the age of majority.

Parma City Sch. Dist., 550 U.S. 516, 525–26 (2007)). Procedural
compliance is particularly important when it impacts the
substantive rights of students and parents. Id.

The undisputed facts show that plaintiff was not given
appropriate notice that the ALJ would effectively hold a due
process hearing at the same time as oral argument on her emergent
application. While the May 31, 2013 hearing before the ALJ was
designed to address the emergent relief requested, the ALJ
ultimately decided B.G.'s due process complaint on the merits
without giving B.G. prior notice this would occur. Despite the
morphing of the emergent relief hearing into a due process hearing,
and perhaps because of it, the ALJ did not address the underlying
merits of whether B.G.'s IEP afforded her a FAPE and necessary
transitional services as is required at a due process hearing. See
J.T. & C.T. o/b/o T.T., Agency Doc. 2006 11230, 2007 WL 1398738,
at *30-31 (N.J. Adm. Apr. 30, 2007) (ALJ determined at a due
process hearing that graduation should be reversed and a new IEP
issued because the student's current IEP was defective as to the
provisions related to transitional services, amongst other
deficiencies).

The hybrid-hearing scenario that occurred here also occurred
in K.B. v. Haledon Bd. of Educ., C.A. No. 08-4647 (JLL), 2010 WL
2079713 (D.N.J. May 24, 2010). The Court finds K.B. directly
analogous and controlling. In K.B., the ALJ applied the legal

17

standard for emergent relief to the plaintiff's due process claim that she was denied a FAPE. Id. at *3. However, the court found this was an error because "[c]laims for denial of a free and appropriate public education under the IDEA are not analyzed under the N.J.A.C. § 6A:3-1.6(b) four-prong test for emergent relief,[5] but are evaluated as to whether or not a school district provides an IEP reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." Id. (citation omitted). Finding that it did not have "a fully-developed record with which to review Plaintiffs' due process request," the court remanded the case to the New Jersey Office of Special Education Programs to be addressed in a manner consistent with the IDEA and New Jersey law. Id.; see also N.J.A.C. § 6A:14-2.7(g) ("[w]hen the Office of Special Education Programs receives a request for a due process hearing, the matter shall be processed and, as appropriate, mediation and a due process hearing in accordance with these rules will be made available to the parties."). The same relief granted in K.B. is warranted here. As in K.B., there is no evidence that the ALJ considered plaintiff's IEP and whether the services provided were appropriate. After the court found that plaintiff was noncompliant, it ruled against plaintiff without considering the merits of her due process complaint. Since this Court does not

---

[5] See note 1.

have a fully developed record on plaintiff's due process request the matter shall be remanded in order for a full due process record to be developed.

As explained <u>supra</u>, in determining whether Ocean City violated the IDEA, the ALJ should have considered whether the IEP conferred a meaningful educational benefit to B.G. Similarly, in <u>R.S. v. Montgomery Twp. Bd. of Educ.</u>, the district court found remand was appropriate because the ALJ failed to examine whether the student's IEP "adequately addressed the issues that the disability presents." C.A. No. 10-5265 (AET), 2012 WL 2119148, at *6 (D.N.J. June 11, 2012). Likewise, in this case, the ALJ did not evaluate whether B.G.'s IEP afforded her a meaningful educational benefit in relation to the transitional services she was to receive.[6] In fact, it does not even appear that the ALJ had a copy of the IEP.

---

[6] The ALJ's legal discussion states, in full:

> Under appropriate circumstances, IDEA would allow petitioner to remain in school until she is twenty-one years old. But in this case, there appears to be no purpose in her continuing her education. For the last three years, she has been enrolled in three separate programs, and in each of those programs she has declined to perform the work assigned, either academic or vocational. Her sole reason for seeking to remain in school appears to be a desire to receive free counseling from the school psychologist and medication from the "medicine doctor." A desire to receive free medical care does not constitute a reason to remain in school.

Ocean City argues that, "[e]ven though [the ALJ] did not explicitly state B.G. was offered FAPE, it is clear in his decision that he determined that she was provided with [a] FAPE." Def.'s Br. at 12. The Court disagrees that the record reflects that any meaningful evaluation was done of B.G.'s IEP and the transitional services required by the IEP, and whether these transitional services offered her a FAPE. This is plainly not reflected in the May 31, 2013 transcript. It appears to the Court from the transcript that the ALJ assumed that since plaintiff was noncompliant, this was determinative on the due process issues plaintiff raised in her April 18, 2013 due process complaint. The Court finds this was an error. The record is simply not developed as to whether appropriate services were rendered to plaintiff and whether this affected her attendance. It may be the case that plaintiff's placement was appropriate and that plaintiff's noncompliance was not caused by any inadequacy. However, that issue

_____

Petitioner has sufficient credits to graduate. She has declined to take advantage of the educational opportunities afforded [to] her over the past three years. Consequently, there appears to be no valid reason to compel Ocean City to continue to expend time, effort and money in an effort to provide petitioner with an education which she has continuously rejected.

Accordingly, petitioner's application for continued education must be DENIED, and petitioner should be graduated.

June 3, 2013 Order.

was not addressed by the ALJ. As such, the Court must remand the case in order for the ALJ to conduct an independent due process hearing which satisfies all of the appropriate procedural requirements.

Rather than addressing the merits of plaintiff's due process complaint de novo, the Court finds that in the first instance it is appropriate for the ALJ to address these issues. The Court "defer[s] to the expertise of administrative agencies in the areas upon which those agencies are called to administer." Fuhrmann, 993 F.2d 1031, 1043 (3d Cir. 1993); see also R.S., 2012 WL 2119148, at *7 (remanding the case back to the ALJ for redetermination of whether plaintiff received a FAPE and recognizing that "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy'") (internal citation omitted).

### c. Emergent Relief Petition

As an ancillary to her argument that the ALJ did not properly consider her due process complaint, B.G. argues that the ALJ did not fully consider her emergent relief petition. Pl.'s Br. at 6. In response, Ocean City argues that B.G. did not present any argument for emergent relief but that nonetheless the ALJ "did discuss B.G.'s desire to stay in school another year and why he determined that would not be appropriate, which addresses exactly what her emergent relief petition was seeking." Def.'s Br. at 11.

21

At an emergent relief hearing, the judge must determine whether:

> 1. The petitioner will suffer irreparable harm if the requested relief is not granted;
>
> 2. The legal right underlying the petitioner's claim is settled;
>
> 3. The petitioner has a likelihood of prevailing on the merits of the underlying claim; and
>
> 4. When the equities and interests of the parties are balanced, the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted.

N.J.A.C. 1:6A-12.1(e). Without specifically addressing these four factors, the ALJ denied B.G. emergent relief. See June 3, 2013 Order.

Since B.G. has graduated, an analysis at this time into whether emergent relief was warranted is effectively moot. On remand the ALJ will consider whether B.G.'s due process was violated. If upon remand the ALJ determines that B.G. was denied due process, B.G.'s graduation should be set aside. See, e.g., J.T. & C.T. o/b/o T.T., 2007 WL 1398738, at *31. Alternatively, if the ALJ determines B.G. was not denied due process, her graduation will stand. The Court expects that amongst other issues to be considered at plaintiff's due process hearing, a complete record for the ALJ's consideration will be made as to whether plaintiff's medical condition caused her noncompliance. It does not appear

that a complete record on this issue was made at plaintiff's emergent hearing.

The Court makes it clear that it is not expressing any opinion as to the merits of B.G.'s due process complaint and whether B.G. was provided with adequate services. The Court acknowledges defendant has presented a fairly detailed record that plaintiff was not compliant with the requirements of her programs. It may be that on remand it is decided that plaintiff's services were adequate and the blame for her noncompliance rests on her shoulders. If this occurs, this should result in the denial of her due process claim and the affirmance of her graduation. Nonetheless, at this time the Court is not deciding the merits of the underlying due process issue. The Court is merely ruling that because of the noted procedural deficiencies this matter must be remanded so that the merits of plaintiff's due process complaint can be appropriately addressed.

## CONCLUSION

Accordingly, for all the foregoing reasons, B.G.'s summary judgment motion [Doc. No. 11] is GRANTED to the extent plaintiff requests the Court to remand this matter to the New Jersey Office of Special Education Programs in order for B.G.'s due process complaint to be addressed in a manner consistent with the IDEA and N.J.A.C. § 6A:14-2.7. To the extent plaintiff's motion asks the

Court to address plaintiff's due process issues <u>de</u> <u>novo</u>, the request is denied. An appropriate Order follows.

<u>s/ Joel Schneider</u>
JOEL SCHNEIDER
United States Magistrate Judge

Dated: September 26, 2014